at all, be Dr. James B. McDonald at all. Ms. Grammel, whenever you're ready. Thank you, Your Honor. Good afternoon, and may it please the court. My name is Shannon Grammel, and I represent the Amish plaintiffs in this case. The Amish are religiously committed to living separate and apart from modern society. Their faith requires them to educate their children in private Amish schools in their isolated Amish communities, and it also requires them to reject vaccination. Nearly every other state in the country would accommodate the Amish with a religious exemption to their school vaccination laws. Does the Constitution require that those states accommodate them? The Constitution, when you have a law that looks like New York's does, where you offer a medical exemption and not a religious... That's not the question I asked. Does the Constitution require a medical exemption for children? If there's a vaccination requirement, does the Constitution require a religious exemption? Your Honor, it may under certain circumstances, such as here where we have the Amish, who there is a right recognized in Yoder, where the Amish faith is so intertwined and so bound up with the Amish way of life, that if a state is going to require the Amish to contravene their faith in this way, to threaten their very salvation, the state has to have a very compelling interest for doing so. So there's a rule different for the Hasidim than there is for the Amish? It's not an Amish specific rule, Your Honor, but it's saying where you have a faith that is so bound up with the way of life like this, that asking the individuals to contravene their faith would so threaten the existence of these faiths, you have to have a compelling reason for doing so. And if the state can show a compelling reason, and if the state can show that the law is narrowly tailored for that compelling reason, then it may not be unconstitutional. So your view is that Yoder requires New York to provide a religious exemption to the Amish if New York requires children attending school to be vaccinated? Yes, Your Honor, that's our position. That if New York is going to require a vaccination like they are here, and for several reasons, the way this law is designed, a religious exemption for the Amish is required. I'm just testing the broader principle. Say New York was for the first time deciding to enact a vaccination requirement like they did in 1966. And they decided not to include a religious exemption. Then it occurs to me that the Constitution doesn't require a religious exemption. And I believe the case law supports that view. That's why I asked you the question. And your response is Yoder says as to the Amish it does. I think it could as to the Amish and other faiths that operate similarly to the Amish faith. I think it also could if there's evidence that the law without a religious exemption was motivated by a hostility to religion or lacked neutrality. I think that could also require compelling strict scrutiny under the Constitution. How do you measure that hostility? You have to look to, there are several ways to find hostility or several things you look to when determining whether there is hostility or lack of neutrality in the law. And it's not just hostility. Neutrality exists if the law is, if religion is singled out for disfavored treatment. And so here we have several signs that show that that is exactly what happened here. Religion was singled out for disfavored treatment because it was religion. On the face of the law, the Act refers to exemptions because of religion. It surgically removes only exemptions because of religion. Well, it's because it had previously granted a religious exemption. It was removing that. Correct, it was removing only the religious exemption because of the religious motivation. Well, there were no other exemptions other than a medical exemption, were there? That's correct, but the medical exemption was not tinkered with, was not changed in any way whatsoever. The state decided that only religious motivations were unworthy of continued exemptions. You, I think in your briefs, agreed that the fact of a state previously having a religious exemption and removing it does not automatically constitute, does not automatically indicate it's not neutral or generally applicable. And so the fact that the word religious exemption or something to that effect is in the statute certainly isn't enough to indicate it's not neutral and generally applicable, is it? I think that's right, Your Honor. We're not arguing for a per se rule that any removal would be unconstitutional. But more so than that, here you also have statements by the primary sponsors of the bill in both houses, statements by other sponsors of the bill, and all this is alleged in the complaint. How many statements did you identify? We, I could count them up here, I would have to say- I think there's five different people you mentioned, five or six? We cited, it was a sampling of the statements, but yeah, I think that that sounds right, Your Honor. How many members are there in the state legislature? There are hundreds altogether, yeah. But I think what's important here and what distinguishes this from cases where courts don't rely on a couple of straight statements here or there is these are statements by the sponsors of the bill, the people who designed the bill, the people who championed it, but you also have departures from process and Arlington Heights tells you that's another sign you look to in determining whether there's a lack of neutrality. And it's not just a lack of neutrality here, there's also a system for individualized exemptions that the state has made a value determination that the Constitution does not permit them to make, that medical exemptions are worthy of solicitude and religious exemptions are not. That's the kind of thing that Fulton, in Smith, in Lukumi, the Supreme Court tells you, you can't do that, you can't have an individualized exemption and refuse to extend it to religion without a compelling reason. Well, I think that the first step that was determined, whether or not you're talking about if the non-religious exemption presents the same risk in light of the stated intent. And that's, I think, the part you seem to be jumping over. If part of the intent is this idea about concern about protecting individuals, then it seems clear that someone who has a medical condition such that getting vaccinated would be dangerous to them is in line with the stated goal of protecting health of both students and others, isn't it? I have a few responses to that, Your Honor, and I want to make sure I don't forget them. But the first response is that when we're looking at the state's asserted interest, we're looking at the interest the state asserted at the time it passed the law. And when you look at the legislative materials, the history of this law, that interest is the prevention of transmission and infection. It's preventing the spread of diseases. Coupled with that, in paragraph 95 of the complaint, and again, we're on a motion to dismiss here, so these allegations have to be taken as true. In paragraph 95, we allege that most of these vaccines don't actually operate to prevent transmission and infection. They provide personal protection from symptoms and things like that. So they're not actually preventing transmission per the state's stated interest. And I did, in fact, lose the third response I had to that, which is that- We'll give you some more time. I'll lobby on your behalf. I apologize, Your Honor. I've lost my train of thought on the third response. But, yes, so you have these- When you're looking at the state's interest in preventing the transmission of disease and you have students who are not vaccinated on one hand for this reason, medical reasons, and students who are not vaccinated on this hand for religious reasons, the risk to that stated interest is exactly the same. I have a hard time with the equivalency here. The medical exemption is quite different from the religious exemption. The religious exemption is general as to all vaccines. The medical exemption is specific as to vaccine. So a child's parents apply for a medical exemption because the child is allergic to the pertussis vaccine. They don't get an exemption from all vaccines. They get an exemption for that vaccine, and they're only exempt for one year, and then they have to recertify, don't they? That is by the state's design, Your Honor. The state could have done something- So the answer is yes, I take it. It's a yearly exemption. So it's the state's fault that it particularizes it and minimizes it. But you're trying to draw an equivalency. I don't see the equivalency there. A religious exemption is broader, far broader. A child who has a religious exemption is unvaccinated for seven or eight diseases. A child with a medical exemption is unvaccinated for one. How are those equivalent? Perhaps, but that's not necessarily the case, Your Honor. I can imagine students who can't get any vaccine for one medical reason or another. Well, there may be some of those. And there may be religious students who are only opposed to some vaccines because of what's in them and not opposed to other vaccines. Well, let's talk about your applicants. They're seeking a general exemption from all. Yes, that's correct, Your Honor. Okay, that's what we'll talk about, is your clients. Yes, and that triggered actually the third response I had to the prior question. I knew I'd help you out. Thank you. I appreciate it. And there was a suggestion that, of course, for students with contraindications or precautions that prevent them from getting vaccines, there is a medical danger for them to receive vaccines. I think focusing on that ignores just how dangerous to my applicants' salvation, their very religious conviction a vaccine is. It simply is not an option for them to be vaccinated. And they've alleged in the complaint, and they've done in other states, they're more willing to go to jail or, as they put it, suffer a martyr's death than vaccinate their children against their faith. Because as exactly was the case in Yoder, their very salvation is threatened. So for the state to say that medical danger and spiritual danger, one is more important than the other, that's the kind of value judgment these Supreme Court cases are really concerned with. And if the state's going to make that value judgment, it has to satisfy strict scrutiny. And I know I'm... So the level of scrutiny is determined by the sweeping perception or the sweeping manifestations or dictates of one's religion? Well, I think, Your Honor, we're here on an as-applied challenge, and so we're looking at these Amish claimants and their religious... We give you relief, don't we, then? How does this impact on other faiths that seek the same relief? Other people could bring other as-applied challenges, and depending on their facts and their circumstances, perhaps they'd be entitled to relief, perhaps not. This is nothing new in the First Amendment context. RFRA operates and state RFRAs operate under a strict scrutiny framework and offer individualized relief. And as the amicus brief of the states points out, there's not a huge problem. And I apologize, I'm over time. No need to, Your Honor. Thank you, Your Honor. I have a question. Absolutely. Your brief asks us to reverse the judgment of the district court. Is that right? Yes, Your Honor. But you're also saying that you have an as-applied challenge here. Wouldn't you be satisfied by a simple vacator of the judgment and a remand for further proceedings in order to deal with the question of neutrality? How do we know about or how can we deal with the issues of fact that seem to remain concerning the question of neutrality? Your Honor, yes, we would be happy with that. We continue to believe that a reversal is warranted for all the reasons stated in our briefs. But if the court were to vacate and send back for further fact development and discovery, that would make sense. And we would just ask that the court make clear that it's doing so both with respect to the dismissal and then with respect to the consideration of the injunction as well. All right. We've got some time left for rebuttal. Thank you, Your Honor. May it please the court. Mark Rube for the New York State Department of Health Commissioner, Dr. James McDonald. The district court correctly held that New York school's vaccine requirement comports with the free exercise clause for substantially the same reasons that this court upheld Connecticut's requirement in We the Patriots v. Connecticut. New York's vaccine requirement, like that in Connecticut, is a neutral and generally applicable law subject to rational basis review. The law is neutral on its face. The court in We the Patriots v. Connecticut looked to the statutory scheme as a whole. So not just the repeal in and of itself, but the entire vaccine requirement. And that has no application to religion at all. So it's unlike Tandon or Roman Catholic Diocese, which singled out houses of worship for distinctive treatment. There is also no departure from neutrality in the law itself or the administrative process. The legislative history argument that plaintiffs focus on here was not raised to the district court, apart from a single sentence in the complaint, not in the opposition to the motion to dismiss, not in the opposition to the preliminary injunction. Didn't the district court, though, address that? Yes. The district court went through the factors and looked at the different elements of neutrality and general applicability, and it looked at the legislative record here. The problem is that plaintiffs are relying on a lot of press releases and statements outside the official record, and the district court was not obliged to canvass every public statement by the 200-plus members of the New York legislature. And I'd also point to Masterpiece Cake Shop on that issue, because Justice Kennedy, writing for the court in Masterpiece Cake Shop, observed that the commissioners, so two commissioners made statements that were described as disparaging to religion, and Justice Kennedy highlighted the silence of the other commissioners. So that reasoning cannot be applied here, because when there's a press release or something like that outside the official record, you can't infer anything from the response of the other legislatures. I have a little experience with the legislature earlier in my life. The legislature is perfectly capable of having a finding of legislative intent. They could have made specific findings as part of the legislation, could they? Yes, and in the Senate sponsors' memorandum and the Assembly sponsors' memorandum, there are statements of intent. There are statements of intent in the Senate debate, too. And I just want to draw another word of caution. They're generally contained within the bill jacket, which is generally used in measuring the temperature of the legislature and the intent of the legislation, at least under New York, in New York law, right? That is correct, Your Honor. And just to explain further why it would be dangerous to sort of impute animus from statements of individual legislatures, it would sort of allow a handful of legislatures to thwart the collective will of the people's elected representatives. And I just draw a distinction between two more recent decisions of this court authored by Judge Lee. M.A. involved an executive order. So that case, you could involve one particular person's intent. There was a decision from September involving what's known as the illegal reentry statute. And in that case, applying Arlington Heights, the court looked and found there was some reprehensible statements in the congressional record, racial slurs, and the court held that that would not be imputed to the collective judgment of Congress. And the same reasoning applies here. I would like to turn to general applicability, unless there's any other questions on neutrality. So on general applicability, this court in We the Patriots v. Connecticut considered a religious, a medical exemption very similar to the one here and concluded that it was not a discretionary exemption that triggered strict scrutiny and that it would allow a decision maker to favor secular beliefs over religious ones. So like the problem in Fulton was that a single government decision maker had sole discretion to grant exemptions and by doing so could choose to favor secular objections over religious ones. Here, there's no such discretion. It requires a physician's certificate based on objective criteria. And the role of the school actually constrains the physician's discretion. There's a double check. The school double checks that this certification actually comports with the requirement of the law. And then there's further administrative proceedings available if someone disputes that finding. But this is far from the types of sole discretion, good cause type exemptions that have triggered strict scrutiny. What do you make of these? Your opponents cite several schools that have extraordinarily high medical exemption rates. They identify three at least in particular. Of course, it's hard to know. I presume they sound like private schools because they're not associated with the municipality in any way, shape, or form. And it's hard to know in terms of what the percentage is, in terms of what the size of the school is. What's your response to their assertion that there are a number of schools where the medical exemption seems to have kind of gotten out of hand? That speaks to the discretionary aspect, too. Well, the Department of Health would love to have the resources to audit every school every year and ensure compliance. That's just not practical as a matter of the administration of state government. It has a limited budget. It can only audit a select number of schools a year. So based on that data, it's really hard to draw any conclusions since it wasn't audited. We don't know whether those medical exemptions were properly granted or not. We don't know the nature of the neighborhood. So it's not enough to give a plausible inference that there is some sort of- Their complaint also references a number of 66,000 students that don't even have an exemption but are vaccinated. What's your, that's in their complaint, your response to that? It's sort of the same response I had to the individual schools. It's, we don't know exactly what the product of those are. And I would say for purposes of this claim, which is a religious discrimination claim, there's no allegation that any supposed under-enforcement or non-enforcement favors secular beliefs over religious ones. We just don't know anything about it. But again, it goes to the DOH's ability to, limited ability to audit every school every year. And it's limited resources to ensure perfect compliance. And that's what the district court said, that perfect compliance is not the measure of whether a rule is neutral and generally applicable. I'd like to turn to the comparability of the risks also. So We the Patriots versus Connecticut. And We the Patriots v. Hope will also consider this argument about whether in assessing risk, the court looks at a one-to-one comparison or compares the aggregate risk of a medical exemption and a religious exemption. And the court said that for purposes of the general applicability test, courts look to the aggregate, which is what it properly did here. And in We the Patriots versus Connecticut confirmed that on a motion to dismiss, and also to a certain extent the New Yorkers for Religious Liberty decision that recently came out. Can I ask you with regard to the risk or the harm that the state is incurring? I asked your friend on the other side sort of what the, well, we discussed what the intent was. What's the harm that's trying to be prevented? And there was some suggestion that perhaps it's not clear. What's your view on the specific harm that's being addressed? Well, I think it's clear, and it's the same as We the Patriots versus Connecticut. There's an overriding interest in public health, and there's a particular interest in the safety of children in schools. And we're sort of criticized for shifting explanations for saying that, but that's not shifting explanations at all. Life, society has complex problems. The causes are often, the solutions and causes are often complex and overlapping. Vaccines work in complex ways. Some, they have multiple benefits. They can prevent one from getting infected. They can prevent one from spreading the disease once one is infected. And they can mitigate the consequences of infection. And so the statute serves the ultimate goal of public health, but because vaccines work in complicated ways, they achieve that goal through many different ways, and different vaccines protect the public health in different ways. And the emphasis was because this statute was the result of the measles outbreak, so the legislatures were particularly concerned with the spread of measles, which is a very dangerous and very easily spread disease. And so that's why that was the emphasis. But if you look in the legislative history of when the other vaccines are added, because the court looks to the statutory scheme as a whole, then you will see some of the other rationales for the tetanus shot and various other shots. I think I'm out of time. If the court has any other questions, I'd be happy. You heard my question to opposing counsel. Isn't there enough ambiguity here in the record to suggest that we should vacate the judgment and remand for further proceedings to determine these issues of fact regarding neutrality? How else are we going to be able to make that decision? Well, if I understand your neutrality question to be referring to the statements of individual legislatures, I would go back to the argument that I made earlier that the legislative intent cannot be – the collective legislative intent cannot be derived from a handful of legislative decisions. That's what the Supreme Court in the United States versus O'Brien said. That's what this court said in the illegal reentry statute decision. And the other cases involved, for example, executive orders, where there was one individual who made the order and there was a question of intent, or a small body like the commissioners in Masterpiece Cakeshop, which is an administrative body of seven individuals. Here we're talking about a legislature of 200-plus members, and that's not a fact question, but a question of law that this court can resolve in a motion to dismiss. Thank you. All right. Thank you, Mr. Britton. I have five points I'd like to try and get through quickly and rebuttal here. My first – And I'm sorry, not to – I'm sorry, Your Honor. But I hope one of those points is where I would ask you to also address how this case is different from We the Patriots v. Connecticut. Yes. There are three reasons this case is different. The first reason is that this is an – I apologize. The first reason is that this is an as-applied challenge, whereas We the Patriots was a facial challenge. And as we've discussed in tandem, when we're looking at the comparability of the religious activity and the secular activity, you're looking at the religious activity that the applicants are requesting. On a facial challenge, they were requesting for all of the claimants across the state, anyone who would want this religious exemption. We're requesting just for our Amish plaintiffs, which ties into a second reason the two cases are different, is that this case involves the Amish. And as alleged in the complaint, the Amish at Paragraph 1, they live in separate, isolated communities. In Paragraph 43, they're very healthy. In Paragraph 94, there were no measles cases in the recent outbreak. You say they have no contact with the outside world? I said not no contact, Your Honor, because I'm from a community in which the Amish are readily present. Certainly not no contact, Your Honor, but they live in rural communities. They're not in major metropolitan areas. And that's perhaps why you see there was no measles cases during the recent outbreak that was happening in Brooklyn and Rockland. So that is relevant. And the fact that it's the Amish is also relevant under Yoder because it implicates this right in a way that We the Patriots did not. And the third reason... Is there something about their religious doctrine that differs from others, Catholics who have objections with regard to the fact that many of the processes involve the use of fetuses? The Supreme Court in Yoder went to great lengths to explain just how intertwined the Amish faith was with every aspect of daily life. The state's interest there in Yoder was whether a child should stay in high school or not, as opposed to, wasn't it? Yes. The state claimed an interest in the welfare of children and ensuring children were educated. Okay. You see that as comparable to public health? I think the lesson from these First Amendment Supreme Court cases is that the state can't just assert its interest generally. That's what the Supreme Court said in Fulton. That's what the Supreme Court said in Gonzales. They have to assert their interest with respect to the religious claimants at issue. Does the state have an interest in the implications of unvaccinated children that might cause other children to become sick? Does the state have an interest in preventing children to become sick? Yes. The state has that interest, but what we're going to look at once we get, that's a question once we get to the level of constitutional scrutiny. And if strict scrutiny applies here, as we've said it does for four reasons, the state has to not only prove it's the state's burden, they have to prove they have a compelling interest and that there is no less burdensome alternative. Let me ask you about the remand that you asked for. What do you seek to establish? Are you going to take the deposition of 207 legislators? I think we'll do what we can during discovery, Your Honor. I think there are many things we could do during discovery. What's the test going to be? How do we decide what the legislature's intent was? Courts do it all the time. They do it in voting rights. And we're warned against doing it. Courts are perfectly equipped to question into whether... What do you say is the test now? Are they bound by the legislative sponsors? Are they bound by the views of the particulars who voted for it? It's a holistic inquiry, Your Honor. There are other things you look at too, not just the statements of the legislature, but you look at the circumstances surrounding the repeal. You cited six people, and there were over 120 people that voted for this legislation. So I need to ask you, does the 2% decide? No, not, Your Honor. But this is, again, it's a holistic inquiry, and we also have other evidence in departures from normal... Such as what? Departures from normal processes. The repeal did not go through the relevant committee in the Senate, and that was of concern to senators during the floor debate. That's a sign that things aren't quite right here. There's other... It's not just neutrality, Your Honor. There are fact disputes going to, as you discussed with my friend on the other side, why the state is or isn't auditing schools, why some students are or are not compliant. I don't know how the state's auditing of schools somehow goes back to the legislatures, whether the legislature exhibited animus. The legislature doesn't regularly communicate or dictate policy with regard to the State Department of Public Health. That's a matter for the governor and the executive wing to... That's the second floor of the Capitol building. I was talking about additional fact disputes beyond just neutrality. And, of course, even at neutrality, the Supreme Court has said all we're looking for are subtle departures from neutrality are a problem. Slight suspicions are a problem. And what we've alleged in the complaint, in paragraphs 20 and 70, there is at the very least a fact issue here. And, again, we're at the 12B6 stage. And the fact issue is what? As to neutrality, as to noncompliance in audits, as the court was discussing with my friend on the other side, in terms of general applicability. But the noncompliance of audits somehow determines the legislative intent? No, Your Honor, that's an issue separate and apart from neutrality. Well, if the legislative intent is neutral and dovetails more with the Patriots, what happens then? There are three other reasons strict scrutiny applies in this case. Number one is that this law is not generally applicable because it has the system for individualized exemptions it won't extend, and also because it treats comparable secular activity more favorably. My friend on the other side... Which means the Patriots reject it. But that was a different law and a different sort of challenge. And it brings me back to the third difference I wanted to mention to the court, which is that the medical exemption here functions fundamentally differently. We've alleged in the complaint, in paragraphs 24 to 27, that school officials are in fact exercising substantial discretion in granting or denying medical exemptions, even where a doctor has provided a note. And what's the factual allegation on which that's based? We cite the regulations which allow school officials to request more information before they grant a secular exemption. So that, therefore, gives them broad discretion? This court said in Go V. Zucker that the state has longstanding discretion to decide whether to grant or deny medical exemptions, and nothing about the regulations upset that. There are also two affidavits submitted in support of the preliminary injunction where parents testified that a student was given a note by a doctor that their contra indicated. One school denied the exemption, one school granted it. That shows discretion. There are, as your honors mentioned, varying rates of medical exemptions granted in schools. And at this motion to dismiss stage, the inferences have to be drawn in plaintiff's favor. And I've lost count of where I was in my five points, but I'm way over time. And so I just want to close by saying that what the state is doing here is the state has determined that it's okay to spare a child vaccination for the sake of their immune system, but it's not okay to spare a child vaccination for the sake of their soul. And that's the kind of value judgment the First Amendment does not allow. Thank you, your honor. Thank you very much. Thank you both. Thank you. Well argued. We'll take the case under advisement. Thank you.